UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                        **Plaintiff,**

   vs.                                                   1:23-CV-1299
                                                             (MAD/MJK)

$14,100.00 IN U.S. CURRENCY,

                        **Defendant,**

CLINTON WADDELL,

                        **Claimant.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**OFFICE OF THE UNITED**                 **ELIZABETH A. CONGER, AUSA**
**STATES ATTORNEY**
100 South Clinton St.
Syracuse, New York 13261
Attorney for the Government

**CLINTON WADDELL**
219 Lake Desolation Road
Middle Grove, New York 12850
Claimant, *pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

      On October 23, 2023, the United States filed a verified complaint for forfeiture *in rem* for $14,100.00 in U.S. Currency ("Defendant Property") as property traceable to the proceeds of offenses in violation of Title 21, United States Code, Sections 841 and 846. *See* Dkt. No. 1. A warrant for the arrest of the property *in rem* was issued the next day, *see* Dkt. No. 2, and the

1

property was taken into the custody of the United States Marshals Service on October 30, 2023. *See* Dkt. No. 4.

A copy of the verified complaint, warrant for the arrest of the Defendant Property, and notice to a potential claimant were served on Claimant Clinton Waddell on October 24, 2023. *See* Dkt. No. 10. On November 27, 2023, the Government filed a notice of publication which indicated that a Notice of Civil Forfeiture had been publicly posted for thirty days beginning on October 25, 2023. *See* Dkt. No. 5. The notice included the timing requirements for filing an answer or claim. *See id.* at 2.

Also on November 27, 2023, Claimant requested an extension of time to file an answer and claim because he was incarcerated in state prison but "expect[ed] to be released within the next 14 days." Dkt. No. 6. The Government did not object to the request, *see* Dkt. No. 8, and the Court granted Claimant's request and extended his answer deadline to February 2, 2024. *See* Dkt. No. 9. Claimant did not file an answer or claim by February 2, 2024.

On February 28, 2024, the Government requested an entry of default from the Clerk of the Court, *see* Dkt. No. 13, which the Clerk entered the same day. *See* Dkt. No. 14. On March 1, 2024, the Government filed a motion for default judgment. *See* Dkt. No. 15. On March 19, 2024, Claimant filed a letter seeking to vacate the entry of default and providing tax documents which he asserts demonstrate the legitimacy of the Defendant Property. *See* Dkt. No. 18. Claimant contends that the Defendant Property was derived from his construction company. *See id.* at 1. He states that he "recently served ten months in state prison" and it was "since [he has] been out of prison" that he was able to complete and collect his tax documents. *Id.*

The Government responds in opposition to Claimant's request to vacate the entry of default and in support of its motion for default judgment. *See* Dkt. No. 20. The Government also

2

seeks to strike the claim.  *See id.*  Claimant has not further responded or communicated with the Court.

## II. DISCUSSION

**A.     Motion to Vacate Entry of Default**

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment . . . is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  FED. R. CIV. P. 55(a).  Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)."  FED. R. CIV. P. 55(c).  Rule 60(b)'s "stricter standard of excusable neglect . . . [is] applicable only to the vacatur of a final judgment."  *Holford USA Ltd., Inc. v. Harvey*, 169 F.R.D. 41, 43 (S.D.N.Y. 1996) (citing *Meehan v. Snow*, 652 F.2d 274, 276-77 (2d Cir. 1981)).  There has been no default judgment in this case.

"Where, as here, the clerk has entered a notation of default but a default judgment has not yet been rendered, the Court applies the 'good cause' standard set forth in Rule 55(c)."  *Team Kasa, LLC v. Humphrey*, No. 17-CV-1074, 2018 WL 1867117, *2 (E.D.N.Y. Jan. 24, 2018) (citations and footnote omitted).  Although Rule 55(c) does not define the term "good cause," the Second Circuit has established three criteria that district courts must consider in deciding whether to relieve a party from a default: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented."  *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *accord Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 454-55 (2d Cir. 2013); *Holzman Fabian Diamonds Ltd. v. R & E Diamonds LLC*, No. 17-CV-9489, 2019 WL 1099944, *1 (S.D.N.Y. Mar. 8, 2019); *Ghim Li Int'l Pte. Ltd. v. Am. Fashion Network Imports, Inc.*, No. 5:17-CV-974, 2019 WL 1380432, *3

3

(N.D.N.Y. Jan. 31, 2019). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp.*, 10 F.3d at 96 (citation omitted). These criteria must be applied in light of the Second Circuit's strong "preference for resolving disputes on the merits." *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1077 (2d Cir. 1995) (citing *Enron Oil Corp.*, 10 F.3d at 95); *accord Meehan*, 652 F.2d at 277. Because of this preference, doubts "should be resolved in favor of the defaulting party." *Enron Oil Corp.*, 10 F.3d at 96.

Ultimately, the determination of whether to set aside a default is left to the "sound discretion of the judge, 'the person most familiar with the circumstances of the given case and . . . in the best position to evaluate the good faith and credibility of the parties.'" *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) (quotations omitted). The burden of showing that vacatur is justified rests with the moving party. *See Sony Corp. v. Elm State Elec.*, 800 F.2d 317, 320 (2d Cir. 1986).

   *1. Willfulness*

While a showing of more than "negligence or gross negligence" is required, "the court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "The boundary of willfulness lies somewhere between a case involving a negligent filing error, which is normally considered an excusable failure to respond, and a deliberate decision to default, which is generally not excusable." *King v. Galluzzo Equip. & Excavating Inc.*, 223 F.R.D. 94, 97 (E.D.N.Y. 2004) (quoting *Int'l Painters and Allied Trades Union and Indus. Pension Fund v.*

4

*H.W. Ellis Painting Co., Inc.*, 288 F. Supp. 2d 22, 26 (D.D.C. 2003)); *see also Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).

"In rem forfeiture actions are governed by Rule G of the Forfeiture Rules and the Civil Asset Forfeiture Reform Act of 2000 ('CAFRA')." *United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014) (footnote omitted).  Rule G(8)(c)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions provides that at any time before trial, the Government may move to strike a claim or answer for failing to comply with Rule G(5) or (6) or because the claimant lacks standing.  *See* Supp. R. G(8)(c)(i).  A motion to strike the claim and answer "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence." Supp. R. G(8)(c)(ii)(B).

Here, the Court concludes that Claimant's default was willful.  Claimant had notice of the forfeiture allegation since October of 2023.  *See* Dkt. No. 5.  Proof of his knowledge of the allegation is shown in his request for an extension of time to file an answer and claim.  *See* Dkt. No. 6.  Claimant requested the extension because he was incarcerated in state prison.  *See id.*  Claimant was given until February 2, 2024, to submit an answer and claim.  *See* Dkt. No. 9.

In his claim, he states that he "recently" served ten months in prison.  Dkt. No. 18 at 1.  However, accordingly to the Department of Corrections and Community Supervision's website, Claimant was released from incarceration on December 13, 2023.  *See* Incarcerated Lookup, N.Y.S. Department of Corrections and Community Supervision, https://nysdoccslookup.doccs.ny.gov/ (last visited June 12, 2024).  Claimant provides no explanation for why he failed to file an answer or claim, or otherwise communicate with the Court, from the date of his release to when he filed his claim on March 19, 2024.  *See* Dkt. No. 18

5

at 1.  As of the date of this Memorandum-Decision and Order, it has been approximately four months since Claimant communicated with this Court.  The tax forms that Claimant has submitted indicate that he was invoiced for the preparation of the forms on February 29, 2024, and March 6, 2024.  *See id.* at 29, 58.  At no time did he inform the Court that he was seeking to have those forms completed prior to bringing a claim for the Defendant Property.

It is well understood that "[p]arties appearing *pro se* should be given some leeway in meeting procedural rules due to their lack of legal knowledge, . . . but a reasonable non-lawyer should have realized that some sort of response to the summons and complaint was necessary." *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454 (S.D.N.Y. 2007), *aff'd*, 316 Fed. Appx. 51 (2d Cir. 2009) (citing *Enron*, 10 F.3d at 96) (footnote omitted).  Claimant previously sought an extension from this Court, he has not communicated with the Court in approximately seven months, and he was released from incarceration two months before his deadline to file an answer or claim.  These factors lead the Court to conclude that his default was willful.  *See Todtam*, 241 F.R.D. at 455 ("[The] defendants' default was willful because they ignored the summons and complaint for over seven months without satisfactory explanation"); *John Nagle Co. v. Goldin*, No. 1:16-CV-102, 2017 WL 4043936, *5 (N.D.N.Y. Sept. 12, 2017) ("Thus, where a party is notified that he is in default and he apparently makes no effort to appear *pro se* or to explain his situation to the court, such neglect is inexcusable") (quotation and quotation marks omitted).

### 2. Meritorious Defense

On the question of a meritorious defense, "[t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil Corp.*, 10 F.3d at 98.  "The

defaulting defendant 'need only meet a low threshold to satisfy this factor.'"  *Gench v. HostGator.com LLC*, No. 14-CV-3592, 2015 WL 3757120, *5 (S.D.N.Y. June 17, 2015) (quoting *MD Produce Corp. v. 231 Food Corp.*, 304 F.R.D. 107, 110 (E.D.N.Y. 2014)); *see also Am. All. Ins. Co.*, 92 F.3d at 61 (holding that the defense "need not be ultimately persuasive at this stage" to satisfy this factor).  Nonetheless, a defendant must still "'articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a serious question as to the validity of those allegations.'"  *FedEx TechConnect, Inc. v. OTI, Inc.*, No. 12-CV-1674, 2013 WL 5405699, *8 (S.D.N.Y. Sept. 23, 2013) (quoting *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)) (additional quotation omitted).

"An innocent-owner defense is an affirmative defense to be proven by the claimant by a preponderance of the evidence."  *United States v. One Red 2003 Hummer H2 VIN: 5GRGN23U93H118675*, 234 F. Supp. 3d 415, 422 (W.D.N.Y. 2017) (citing, *inter alia*, *United States v. One Parcel of Prop., Located at 755 Forest Rd., Northford, Conn.*, 985 F.2d 70, 72 (2d Cir. 1993)).  "An 'innocent owner' is one who '(i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstance to terminate such use of the property.'"  *Id.* (quoting 18 U.S.C. § 983(d)(2)(A)); *see also United States v. Real Prop. Located at 229 Potter Rd., N. Kingtown, R.I.*, 91 F. Supp. 3d 303, 306 (D. Conn. 2015).

Here, Claimant asserts that the Defendant Property comes from his "construction company" which he determined after he was released from incarceration and he "was able to get [his] taxes done and found [his] receipt book [he] use[d] for" the company.  Dkt. No. 18 at 1. Claimant provides twenty-six contractor's invoices, only some of which are legible.  *See id.* at 2-

7

27.  They have dates ranging from September 22, 2020, to April 2, 2021.  *See id.*  Claimant also provides two tax returns for 2020 and 2021.  *See id.* at 30-88.

As the Government explains, Claimant's tax forms reflect a net profit across 2020 and 2021 of $10,488.  *See* Dkt. No. 20 at 4 (citing Dkt. No. 18 at 45, 50, 70, 77, 84).  That is $3,612 less than the total amount of the Defendant Property.  *See* Dkt. No. 1.  As alleged in the complaint, the Defendant Property was found on May 11, 2021, located behind a false wall in Claimant's apartment and wrapped with rubber bands.  *See id.* at ¶¶ 17.  The Government also located various illegal substances throughout Claimant's apartment and vehicle.  *See id.* at ¶¶ 12, 19.  Claimant pled guilty to attempted sale of a controlled substance in violation of New York State Penal Law.  *See id.* at ¶ 21.

The Court concludes that Claimant has not established a meritorious "innocent owner" defense that would warrant vacatur of the default as his 2020 and 2021 tax returns do not equal the Defendant Property amount and the Defendant Property was hidden in Claimant's apartment along with illegal substances.  Claimant provides no explanation for the monetary discrepancy, nor does he attest that he did not know about the conduct giving rise to the forfeiture.  In any event, such an assertion would be belied by his guilty plea.  Therefore, this factor weighs in favor of declining Claimant's request to vacate the entry of default.

### 3. Prejudice to Adversary

As to whether setting aside the entry of default would prejudice the adversary, the Government does not address this issue.  *See* Dkt. No. 20.  This case has only been pending for approximately eight months.  *See* Dkt. No. 1.  Nevertheless, because the Court finds that the other two factors weigh in the Government's favor, Claimant's motion to vacate the entry of default is denied.  *See Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 197 (S.D.N.Y. 2021) ("[I]t

is unnecessary for us to determine definitively whether Mood's conduct is egregious enough to make Mood's default willful. We will assume *arguendo* that Mood acted willfully because, as explained below, the other factors weigh in favor of vacatur of the default").

**B.     Motion to Strike the Claim**

"Any 'person who asserts an interest' in the res that is the subject of a forfeiture action may 'contest the forfeiture by filing a claim in the court where the action is pending.'" *Vazquez-Alvarez*, 760 F.3d at 197 (quoting Supp. R. G(8)(c)(i)(B)). "In order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 526 (2d Cir. 1999) (citation omitted). "To establish statutory standing, a claimant asserting rights in property that has been seized and that is the subject of a forfeiture action *in rem* must file a verified claim within ten days after process has been executed, unless the court grants an extension." *Cambio Exacto*, 166 F.3d at 526 (citing Supp. R. Rule C(6)). To establish Article III standing, a claimant must demonstrate (1) an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that can likely be redressed by a favorable decision. *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015). "The [claimant] . . . bears the burden 'clearly to allege facts [in his complaint] demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" *Steinberger v. Lefkowitz*, 634 Fed. Appx. 10, 11 (2d Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also Mercado v. U.S. Customs Serv.*, 873 F.2d 641, 644 (2d Cir. 1989).

### *1. Procedural Requirements*

"Claimants must follow Supplement Rule G's procedural requirements, which include filing both a claim and an answer by the deadline imposed." *United States v. The Premises and Real Property with Buildings, Appurtenances, and Improvements at 4240 Wolf Run, Lewiston, N.Y.*, No. 23-CV-27, 2024 WL 3337823, *2 (W.D.N.Y. July 8, 2024) (citing Supp. R. G(5)). "A claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim. A claimant waives an objection to *in rem* jurisdiction or to venue if the objection is not made by motion or stated in the answer." Supp. R. G(5)(b). "Courts routinely strike claims in federal forfeiture actions where a claimant fails to comply with the deadlines provided by the Forfeiture Rules." *United States v. Any & All Funds on Deposit in Bank of Am. Account Number 004836378025*, No. 14-CV-1928, 2015 WL 5173044, *1 (S.D.N.Y. Sept. 3, 2015) (quotation and quotation marks omitted). This is partly because "[w]hen a claimant fails to file an answer . . . after filing a claim, she does not have statutory standing to bring a claim." *Id.* at *2; *see also United States v. $11,585.00 & $24,077.00 in United States Currency*, No. 5:18-CV-810, 2019 WL 1877295, *2 (N.D.N.Y. Apr. 26, 2019) ("'[W]here a claimant fails to comply with the procedural requirements of the Supplemental Rules, his claim may be stricken for lack of statutory standing'") (quotation omitted).

"However, the court 'has the authority to extend the time period for filing verified claims' if the would-be claimant demonstrates excusable neglect." *$11,585.00 & $24,077.00 in United States Currency*, 2019 WL 1877295, *2 (citing, *inter alia*, FED. R. CIV. P. 6(b)(1)(B) (permitting a court to extend the time during which an act must be done "on motion made after the time has expired if the party failed to act because of excusable neglect")) (footnote omitted). "The Second Circuit has described 'excusable neglect' as an 'elastic concept,' which 'tak[es] account of all

relevant circumstances surrounding the party's omission.'" *Id.* (quoting *Silivanch v. Celebrity Cruises*, Inc., 333 F.3d 355, 366 (2d Cir. 2003)).

> Generally, courts determining whether a missed deadline resulted from 'excusable neglect' consider the following factors:
>
> (1) the danger of prejudice to the party opposing the extension; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the party seeking the extension; and (4) whether the party seeking the extension acted in good faith.

*Id.* (quoting *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 129 (2d Cir. 2011)). "The Second Circuit has noted 'that the equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule' and, 'where the rule is entirely clear, [courts should] continue to expect that a party claiming excusable neglect will, in the ordinary course, lose.'" *Id.* (quoting *Silivanch*, 333 F.3d at 366-67).

Claimant failed to file an answer and he failed to timely file his claim. Both actions are in direct violation of the applicable procedural rules and lend the Court to conclude that Claimant lacks statutory standing to bring his claim.

Claimant also fails to present any argument concerning excusable neglect. *See* Dkt. No. 18. Although this case has only been pending for eight months and the Government would likely not be prejudiced by a short extension, Claimant provides no reason for his delay. After his release from incarceration, Claimant did not communicate with the Court in any way regarding his intention to file an answer or claim. As Claimant has provided no reason for his delay and he has not acted in good faith, the Court granted the Government's motion to strike the claim. *See $11,585.00 & $24,077.00 in United States Currency*, 2019 WL 1877295, at *3 (granting motion to strike a claim where although the Government did not establish prejudice and the claim was

11

filed only a few weeks late, the claimant provided no justification for the delay).  Based on the foregoing, the Court concludes that Claimant lacks standing to bring his claim.

C.     **Motion for Default Judgment**

"Federal Rule of Civil Procedure 55 provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe*, No. 05-CV-7046, 2008 WL 2519894, *3 (S.D.N.Y. June 19, 2008).  "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Id.* (quoting FED. R. CIV. P. 55(a)).  "Second, pursuant to Rule 55(b)(2), the party seeking default judgment is required to present its application for entry of judgment to the court." *Id.*  "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing FED. R. CIV. P. 55(b)(2)).  "When an action presents more than one claim for relief . . ., the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties . . . if the court expressly determines that there is no just reason for delay."  FED. R. CIV. P. 54(b).

When a court considers a motion for the entry of a default judgment, it must "accept[ ] as true all of the factual allegations of the complaint[.]" *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  "However, the court cannot construe the damages alleged in the complaint as true." *Eng'rs Joint Welfare, Pension, Supplemental Unemployment Benefit and Training Funds v. Catone Constr. Co., Inc.*, No. 08-CV-1048, 2009 WL 4730700, *2 (N.D.N.Y. Dec. 4, 2009) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).  "Rather, the court must 'conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* at *2 (quoting *Alcantara*, 183 F.3d at 155).  This inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and

assessing plaintiff's evidence supporting the damages to be determined under this rule." *Alcantara*, 183 F.3d at 155. Although the court may hold a hearing to determine damages, a hearing is not necessary where the evidence submitted in support of the motion supports the amount of damages claimed. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted).

After carefully considering this matter, the Court finds that the Government is entitled to default judgment and an order of forfeiture for the reasons stated in the affidavit of counsel for the Government, AUSA Elizabeth Conger. *See* Dkt. No. 15-2. To those reasons, the Court adds the following analysis, which is intended to supplement, not supplant, the reasoning of counsel for the Government.

As explained, "[i]n order to contest a governmental forfeiture action, claimants must have both standing under the statute or statutes governing their claims and standing under Article III of the Constitution as required for any action brought in federal court." *Cambio Exacto*, *S.A.*, 166 F.3d at 526. Claimant was the only individual to assert a claim for the Defendant Property. However, he failed to establish statutory standing because he did not file an answer and his claim was untimely. Therefore, the Court granted the Government's request to strike the claim and denied Claimant's motion to vacate the entry of default. Because no other person has asserted a claim within thirty days of service or thirty days after the publication of notice, any potential claimants lack statutory standing to claim a right to the Defendant Property. *See United States v. Conolly*, 694 Fed. Appx. 10, 13 (2d Cir. 2017) (citing *Cambio Exacto, S.A.*, 166 F.3d at 526). Accordingly, the Court grants the Government's motion for default judgment and for an order of forfeiture.

## III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, the Court hereby

**ORDERS** that Claimant Clinton Waddell's motion to vacate the entry of default (Dkt. No. 18) is **DENIED**; and the Court further

**ORDERS** that the Government's motion to strike Claimant Clinton Waddell's claim (Dkt. No. 20) is **GRANTED**; and the Court further

**ORDERS** that the Government's motion for default judgment and for an order of forfeiture (Dkt. No. 15) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall **TERMINATE** the pending warrant for Defendant Property (Dkt. No. 2); and the Court further

**ORDERS** that the Clerk of the Court shall enter a final order of forfeiture against the Defendant Property, which shall be forfeited to the Government; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Government's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 31, 2024
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge